IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CRAIG F. PEHLMAN, SR., et al.,** | : | **CIVIL ACTION** |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| **ROBERT W. DOOLEY et al.,** | : | **No. 12-4403** |
| Defendants. | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                                OCTOBER 21, 2013

Co-defendants Robert Dooley and Transervice Logistics, Inc., move for partial summary judgment on issues relating to damages, but not liability, resulting from the alleged accident between Mr. Dooley and Craig Pehlman, Jr., that caused Mr. Pehlman's death. For the reasons that follow, the Defendants' Motion for Partial Summary Judgment (Docket No. 17) on Mr. Pehlman's parents' claims will be granted in part and denied in part.

**I. FACTUAL AND PROCEDURAL BACKGROUND**[1]

On January 11, 2012, Defendant Robert Dooley, driving a tractor trailer for his employer, Defendant Transervice Logistics, Inc., struck head-on the vehicle of 19-year-old Craig F. Pehlman, Jr., Plaintiffs' son and decedent. The collision resulted in Mr. Pehlman's death.

Invoking this Court's diversity jurisdiction,[2] Mr. Pehlman's parents, and the co-administrators of his estate, Craig F. Pehlman, Sr., and Isabella L. Marchio, sued Mr. Dooley and

---

[1] The Court assumes the facts stated herein to be true for purposes of evaluating Defendants' Motion for Partial Summary Judgment, in which the Defendants raise only issues relating to damages, not liability.

1

Transervice Logistics, Inc. They claim that Mr. Dooley was negligently driving Transervice Logistics' truck, within the scope of his employment, when he crossed from the southern into the northern lane of travel and, striking Mr. Pehlman's car, killed him. In their wrongful death claims under 42 PA. CONS. STAT. § 8301, Mr. Pehlman's parents seek damages for "the loss of [Mr. Pehlman's] society and comfort, friendship, guidance, love and affection, and all other damages recoverable," including medical care, autopsy, and funeral and administration expenses. Compl. ¶ 19, 21. They also bring survival claims under 20 PA. CONS. STAT. § 3371 *et seq.* for, among other things, pain and suffering and loss of earnings.

On July 11, 2013, the Defendants moved for partial summary judgment (Docket No. 17) on two issues: first, Plaintiffs' survival claims of (a) fear and fright and (b) conscious pain and suffering; and second, Plaintiffs' wrongful death claims. After considering Defendants' Motion for Partial Summary Judgment, as well as Plaintiffs' Response (Docket No. 18), Defendants' Reply (Docket No. 19), and Plaintiffs' Surreply (undocketed August 22, 2013 letter), the Court will grant the Motion in part, as to the survival claims, and deny it in part, as to the wrongful death claims.

## II. STANDARD OF REVIEW

Upon motion of a party, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment should be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would

---

[2] Plaintiffs are Pennsylvania citizens. Compl. ¶ 1 (Docket No. 1). Defendant Mr. Dooley is a Virginia citizen and Defendant Transervice Logistics, Inc., is a New York corporation with its principal place of business in Kansas. Compl. ¶¶ 2-3. Plaintiffs claim damages in excess of $75,000. Compl. ¶ 6. Jurisdiction is therefore proper under 28 U.S.C. § 1332.

permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). Further, a court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted). Of course, the court may grant summary judgment if the plaintiff's version of the facts, as a matter of law, do not entitle her to relief: "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

### III. DISCUSSION

Moving for partial summary judgment, Defendants do not address the issue of liability for the accident itself but rather argue that Plaintiffs' (a) survival claims and (b) wrongful death claims should be dismissed. The Court addresses these issues in turn.

## A. Survival Claims

By agreement of the parties, Plaintiffs' survival claims under 20 PA. CONS. STAT. § 3371 *et seq.* for (a) preimpact fear and fright and (b) conscious pain and suffering are dismissed. *See* Pls.' Resp. at 1 (Docket No. 18). Defendants' Motion for Partial Summary Judgment is therefore granted as to the survival claims.

## B. Wrongful Death Claims

Mr. Pehlman's parents bring wrongful death claims under 42 PA. CONS. STAT. § 8301, for "the loss of [Mr. Pehlman's] society and comfort, friendship, guidance, love and affection, and all other damages recoverable," including medical care, autopsy, and funeral and administration expenses. Compl. ¶ 19, 21. Defendants claim that they should be granted summary judgment on the Plaintiffs' wrongful death claims for two reasons: first, Plaintiffs have presented no evidence or testimony regarding their pecuniary losses resulting from Mr. Pehlman's death, Defs.' Mot. at ¶¶ 10-21 (Docket No. 17); *see* Defs.' Mem. at 3; and second, "loss of society, comfort, and companionship is not recoverable by parents for the death of a child under Pennsylvania's Wrongful Death Act as a matter of law," Defs.' Mot. at ¶ 22; *see* Defs.' Mem. at 4. These arguments will be addressed in reverse order.

First, although Defendants correctly point out that the purpose of Pennsylvania's wrongful death statute, 42 PA. CONS. STAT. § 8301, is to compensate "the decedent's survivors for the pecuniary losses they have sustained as a result of the decedent's death," Defs.' Mem at 5 (quoting *Slaseman v. Myers*, 455 A.2d 1213, 1218 (Pa. Super. Ct. 1983)); *accord Hatwood v. Hosp. of the Univ. of Pa.*, 55 A.3d 1229, 1235 (Pa. Super. Ct. 2012), *appeal denied*, 65 A.3d 414 (Pa. 2013); *Machado v. Kunkel*, 804 A.2d 1238, 1245-46 (Pa. Super. Ct. 2002), they argue that wrongful death claims "are strictly limited to pecuniary losses, and do not include claims for

4

alleged loss of companionship, and/or the society of a child, so-called loss of 'filial consortium,'" Defs.' Mem at 7 (citations omitted). They point out that in *Quinn v. City of Pittsburgh*, 90 A.2d 353, 354 (Pa. 1914), the Pennsylvania Supreme Court held that "[t]he right to recover for loss of companionship is confined to cases where a husband sues for injuries to his wife. The law does not recognize loss of companionship as an element of damage in any other relation." *Id.* at 354; *see* Defs.' Mem. at 8; *see also* Defs.' Rep. at 2. Defendants observe that this holding has been affirmed throughout the decades. *See, e.g.*, *Schroeder v. Ear, Nose & Throat Assocs. of Lehigh Valley, Inc.*, 557 A.2d 21, 22 (Pa. Super. Ct. 1989) ("Loss of filial consortium has never been legally recognized as a cause of action in this Commonwealth . . . ."); *Jackson v. Tastykake, Inc.*, 648 A.2d 1214, 1217 (Pa. Super. Ct. 1994) ("[W]e do not recognize a parent's cause of action for loss of a child's consortium due to tortious interference of a third party." (quoting *Schroeder*, 557 A.2d at 23)). Based on this authority, Defendants contend, "Plaintiffs have no right to recover loss of decedent's society, comfort, friendship and love under Pennsylvania law." Defs.' Mem. at 9.

But Defendants conflate loss of consortium, which exists as a separate cause of action, and a wrongful death claim for a particular type of damages. Loss of consortium only exists between a husband and a wife; it is a derivative but separate claim that the noninjured spouse may bring for her derivative loss on account of her spouse's injury. *See, e.g.*, *Manzitti v. Amsler*, 550 A.2d 537, 540 (1988) (quoting, inter alia, *Nunamaker v. New Alexandria Bus Co.*, 88 A.2d 697, 699 (Pa. 1952) ("Injury to a wife, not resulting in death, confers upon her and her husband separate and distinct rights of action for which (when both are sued for) separate verdicts must be returned and separate judgments entered. So independent of each other are the substantive rights of a husband and wife in the indicated circumstances that, at common law, the two causes could

be sued for only in separate actions . . . .")), *aff'd*, 574 A.2d 601 (1990), *and abrogated on other grounds by Reutzel v. Douglas*, 870 A.2d 787 (2005).

By contrast, "Pennsylvania's Wrongful Death Act, [42 PA. CONS. STAT. § 8301], allows a spouse, children or parents of a deceased to sue another for a wrongful or neglectful act that led to the death of the deceased," and it allows, *as damages*, "'the value of the decedent's life to the family, as well as expenses caused to the family by reason of the death,'" *Hatwood*, 55 A.3d at 1235 (quoting *Slaseman*, 455 A.2d at 1218). These damages include "the value of his services, including society and comfort." *Id.* (quoting *Rettger v. UPMC Shadyside*, 991 A.2d 915, 932-33 (Pa. Super. Ct. 2010)). In *Hatwood v. Hospital of the University of Pennsylvania*, the Pennsylvania Superior Court looked approvingly upon the trial court's jury instruction that the plaintiffs in a wrongful death action were entitled to "a sum that will fairly and adequately compensate the family for the monetary value *of the companionship, society, and comfort* that [the decedent] would have given his family had he lived; including such elements as work around the home, provision of physical comfort and services, and provision of society and comfort." 55 A.3d at 1236 (emphasis added) (quoting the trial court's jury instructions). Then, in response to the Defendants' objection that "no recovery for non-pecuniary losses such as for society and companionship is permissible under the Act," *id.*, the *Hatwood* Court explained that, as the Pennsylvania Supreme Court has made clear,

> [t]he fact that there is no mathematical formula whereby compassionately bestowed benefits can be converted into a precise number of bank notes does not mean that the tortfeasor will be excused from making suitable reimbursement for their loss. The law commands that the wrongdoer pay what justice requires and common sense dictates. The man who accomplishes a great wrong cannot escape accountability on the basis that his responsibility cannot be computed to the last dollar and penny. . . . All these things—such as companionship, comfort, society, guidance, solace, and protection which go into the vase of family happiness—are the things for which a wrongdoer must pay when he shatters the vase.

*Id.* (quoting *Spangler v. Helm's N.Y.–Pitt. Motor Express*, 153 A.2d 490, 492 (Pa. 1959)).

Further, any implication by Defendants here (albeit through conflation of compensation for loss of society, comfort, and companionship with compensation for the value of other services or gifts, etc.) that Mr. Pehlman's parents' loss of Mr. Pehlman's society or companionship is unrecompensable because "Plaintiffs . . . offered no testimony or evidence that the decedent ever made financial contributions to his family, or had any intention of doing so in the future," Defs.' Mem. at 9, is rejected. The Pennsylvania Superior Court in *Hatwood* affirmed a $2.1 million judgment in favor of parents who had lost a *baby*, *see Hatwood*, 55 A.3d at 1234, and in *Rettger v. UPMC Shadyside* affirmed a $2.5 million award in favor of the parents of a 24-year-old son, 991 A.2d at 921. Defendants' attempts to undermine *Rettger* are without merit. *See* Defs.' Rep. at 1-2. The clear rule under Pennsylvania's case law is that parents may recover for loss of their children's society, comfort, friendship, and love—although not consortium (a spousal right). And under that rule, Mr. Pehlman's parents have pointed to sufficient evidence for the Motion for Partial Summary Judgment to be denied with respect to these claims. *See, e.g.*, Defs.' Reply at 3 (cataloguing Plaintiffs' claims regarding the closeness of Mr. Pehlman to his parents); *see also* Pls.' Counter-Statement of Facts ¶¶ 16-21 (pointing to evidence that Mr. Pehlman lived with his mother at particular periods of time and afterwards spoke with her on the phone several times a day and continued to spend time with her, and that he spent time with his father and had moved in with his father shortly before his death).

The Defendants also contend that this Court should grant them summary judgment because Mr. Pehlman's parents have offered "no testimony or evidence that the decedent ever made financial contributions to his family, or had any intention of doing so in the future," Defs.' Mem. at 9, such that "the evidence of record does not support a finding that Plaintiffs had a reasonable expectation of pecuniary advantage from their son," Defs.' Rep. at 3. However, the

evidence establishes at the very least that Mr. Pehlman gave his parents gifts. *See* Defs.' Rep. at 3. These contributions may have been small, but they are nonetheless enough to convince the Court that categorically denying Mr. Pehlman's parents the opportunity to prove them to a jury is unjust. Even if pecuniary loss is, as Defendants argue, "the destruction of a reasonable expectation of pecuniary advantage from the deceased," "not a matter of guess or conjecture, but . . . [a figure that] must be based upon facts showing the contributions which the deceased made during his lifetime and facts upon which the jury can base an estimate of the probable contributions he would have made for the balance of his natural life"—*dicta* in *Midboe v. State Farm Mutual Automobile Insurance Co.*, 433 A.2d 1342, 1346 (1981) (citation omitted)—these contributions, while small, are contributions all the same. *See, e.g.*, *Slaseman*, 455 A.2d at 1220 ("Under the wrongful death act the widow or family is entitled, in addition to costs, to compensation for the loss of the contributions decedent would have made for such items as shelter, food, clothing, medical care, education, entertainment, *gifts* and recreation. The widow is also entitled to the pecuniary value of the services, society and comfort she would have received from the decedent." (emphasis added)). That Mr. Pehlman's parents have a case for loss of society and comfort not only means that this case likely will go forward to a jury, but also that it would be unwise and unjust categorically to prevent the jury from hearing what evidence his parents want to put on regarding the contributions Mr. Pehlman might have made to them had he lived.

**CONCLUSION**

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED IN PART, as to the survival claims, and DENIED IN PART, as to the wrongful death claims.

\* \* \*

An Order consistent with this Memorandum follows.

BY THE COURT:

s/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge